IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00013-MSK-MJW

RONALD LAASMAR, and
SANDRA LAASMAR,

      Plaintiffs,

v.

PHELPS DODGE CORPORATION LIFE, ACCIDENTAL DEATH & DISMEMBERMENT
  AND DEPENDENT LIFE INSURANCE PLAN, a benefit plan provided by Phelps Dodge
  Corporation, a New York corporation, and
METROPOLITAN LIFE INSURANCE COMPANY,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

THIS MATTER comes before the Court on the Defendants' Motion for Judgment on the Administrative Record, or, Alternatively, for Summary Judgment **(#35)** and supporting brief **(#36)**, to which the Plaintiffs responded **(#39, #40)** and the Defendants replied **(#51)**. Also before the Court is the Plaintiffs' Motion for Summary Judgment **(#37)** and supporting brief **(#38)**, to which the Defendants responded **(#41, #46)** and the Plaintiffs replied **(#53)**. The parties have stipulated that no trial is necessary and that the Court should determine the Plaintiffs' claim based solely upon the administrative record before the Court. Based upon such stipulation, the Court finds and concludes as follows.

**I. Jurisdiction**

The parties agree that the Plaintiffs' claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Therefore, the Court exercises subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

## II. Issue Presented

The Plaintiffs are Ronald and Sandra LaAsmar ("the LaAsmars"). Their son, Mark LaAsmar, died on July 25, 2004. At the time of his death, Mark LaAsmar was a participant in the Phelps Dodge Corporation Life, Accidental Death & Dismemberment and Dependent Life Insurance Plan ("the Plan"). Metropolitan Life Insurance Company ("Met Life"), as the Plan's claims administrator, paid the LaAsmars a life insurance benefit of $96,000, but denied payment of an identical amount under the Plan's accidental death provisions. The LaAsmars now seek to recover the accidental death benefit.

There are two issues presented. The first is whether review of Met Life's denial of the accidental death benefit is *de novo*, or whether such denial is reviewed for arbitrariness and capriciousness. The second issue is whether, upon application of the appropriate standard of review, the denial of such benefit was proper under the terms of the Plan.

In determining these issues, it is important to note what the Court is <u>not</u> deciding. The Court is not deciding whether there are public policy justifications to deny insurance coverage to an individual who drives under the influence of alcohol and is injured or killed. Nor does the Court opine that driving under the influence of alcohol is permissible. The Court simply determines whether the LaAsmars are entitled to recover an accidental death benefit under the terms of the Plan.

## III. Administrative Record

Mark LaAsmar and Patrick O'Hotto were killed in a single vehicle rollover on July 25, 2004 in Grand County, Colorado. Both were ejected when the vehicle rolled over. According to

Officer Richard Kaspar of the Colorado State Patrol, the vehicle was traveling southbound on a straight, dry county road when it traveled off of the right side of the road, rotated clockwise, then rolled over 4 ¼ times.  Officer Kaspar determined that Mark LaAsmar was both the driver and registered owner of the vehicle, suspected that Mark LaAsmar was intoxicated at the time of the incident, and wrote that Mark LaAsmar and his passenger "were pronounced dead at the scene from the injuries they incurred as a result of this accident."

There is no evidence in the record to rebut Officer Kaspar's determinations or suspicions. However, his determinations and suspicions are corroborated by other evidence in the record. A ChemaTox Laboratory report shows that Mark LaAsmar had a blood alcohol level of .227g/100 ml.  The death certificate identifies three causes of death for Mark LaAsmar: (1) head and internal injuries; (2) blunt force trauma; and (3) MVA [motor vehicle accident].  It also states: "Apparent driver ejected from a one vehicle roll over accident."  Two documents[1] written by Gina Gibson, a Benefits Specialist for the Plan, also describe the rollover as an "accident."

Following Mark LaAsmar's death, his parents sought to recover accidental death benefits under the Plan's "Accidental Injury Benefits" provision.  The parties have not provided the complete Plan documents to the Court, and instead rely upon the description of benefits set forth in the Summary Plan Description.  Therefore, the Court hereinafter refers to the Summary Plan Description as the Plan.   The Plan states in relevant part:

> Accidental injury benefits are paid to you if you are seriously
> injured in an accident and if that accident:
> — Is the sole cause of the injury; and
> — Is the sole cause of the covered loss; and

---

[1] These are a letter dated September 8, 2004 and a facsimile transmittal cover sheet dated September 10, 2004.

3

> — The covered loss occurs not more than one year after the date of the accident.

***

> AD&D[2] Exclusions
> Death benefits for life and AD&D will be paid only if you die while covered under the Plan.
>
> AD&D benefits will not be paid for death or other loss caused by or contributed to by: . . .
> — Injuring oneself on purpose; . . . .

Met Life denied the LaAsmars' request for accidental death benefits, and explained its decision in two letters. In the first letter, dated October 19, 2004, Met Life denied benefits for two reasons: (1) because Mark LaAsmar was the driver of the vehicle and was intoxicated at the time of the rollover, there was no "accident"; and (2) the voluntary consumption of alcohol constituted an intentionally self-inflicted injury. Met Life explained that "[t]he dangers of driving while intoxicated are so widely publicized it is common knowledge that a death resulting from drunk driving is the reasonably foreseeable result of such conduct." In the second letter, dated May 26, 2005, Met Life further explained its decision by noting that Mark LaAsmar was the driver of the vehicle and that a toxicology report showed his blood alcohol level was .227g/100ml, almost three times the legal limit. Met Life also explained that when the rollover occurred, there were no adverse weather conditions and the vehicle left the straight roadway and flipped over. Met Life determined that Mark LaAsmar's consumption of alcohol contributed to, or was the sole cause, of the rollover. Met Life then stated that the rollover was not an "accident," because the consumption of alcohol made the rollover reasonably foreseeable. Finally,

---

[2] AD&D stands for Accidental Death and Dismemberment.

Met Life concluded that the "injuring oneself on purpose" exclusion applied because the Mark LaAsmar voluntarily consumed a large amount of alcohol and then drove the vehicle.

## IV.  Standard of Review

A claim for benefits under ERISA brought in the district court is reviewed through an appellate lens.  Except in rare circumstances not applicable here, the Court's review is limited to the administrative record.  *See Hall v. UNUM Life Ins. Co.,* 300 F.3d 1197, 1202 (10th Cir. 2002).  The administrative record consists of the materials compiled by the administrator in the course of making its decision, and includes arguments and evidence before the administrator at the time it made the decision.  *See Hall*, 300 F.3d at 1201; *Sandoval v. AETNA Life and Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir. 1992).

Met Life and the Plan seek judgment upon the administrative record **(#34),** which the parties stipulate is complete.  Met Life and the Plan contend that the Court must review Met Life's denial of benefits under an arbitrary and capricious standard of review.  In contrast, the LaAsmars contend that review is *de novo* for two reasons: (1) the Plan documents do not confer discretion upon Met Life or the Plan Administrator; and (2) the Plan failed to timely notify the LaAsmars of the denial of their appeal for 170 days.  The parties agree that Met Life and the Plan bear the burden of establishing the applicable standard of review.

The Plan provides that the Plan Administrator is the Phelps Dodge Corporation's Benefits Administration Committee.  The Plan also states:

> The Plan Administrator also has the specific right and discretion to determine all matters of fact or interpretation relative to the administration of the Plan, including but not limited to questions of eligibility, interpretations of Plan provisions and other matters related to the Plan.  The decisions of the Plan Administrator and

> any other person or group to whom such discretion is delegated, shall be conclusive and binding on all persons.
>
> In the case of the Life, AD&D [Accidental Death & Dismemberment] and Dependent Life Insurance Plan, the Plan Administrator's duties are limited to amending or terminating its group insurance policy with the Insurance Company which administers and interprets that policy's provisions and authorizes benefit payments.

The Plan then specifies that Met Life is the claims administrator with regard to life insurance benefits.

Ordinarily, when a Plan confers discretion upon the Plan Administrator in administering benefits, review is under an arbitrary and capricious standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Adamson v. Unum Life Ins. Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006). However, in determining what standard of review to apply, "it is essential to focus precisely on what decision is at issue, because a plan may grant the administrator discretion to make some decisions but not others." *Nance v. Sun Life Assur. Co. of Canada,* 294 F.3d 1263, 1266 (10th Cir. 2002). Here, with regard to the issue of determining whether to pay accidental death benefits, the Plan substantially limits what the Plan Administrator can do – it has discretion only to amend or terminate the group insurance policy administered by Met Life. The Plan does not explicitly state whether Met Life has any discretion in determining a claim of benefits. Absent a clear grant of discretion in the Plan, the Court concludes that Met Life had none. Under such circumstances, the review is *de novo*.

When review is *de novo*, the Court gives the Plan language a common and ordinary meaning which a reasonable person in the position of the Plan participant would have understood

the words to mean.[3]  *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996).  The Court gives no deference to either party's interpretation of the Plan.  *See Firestone Tire & Rubber Co.,* 489 U.S. at 112-13.  The LaAsmars bear the burden of proving a covered loss under the Plan, and Met Life and the Plan bear the burden of proving that an exclusion applies.  *See Blair v. Metropolitan Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir. 1992).[4]

### V.  Analysis

The LaAsmars contend that their son's death was solely caused by a motor vehicle accident and that they are entitled to accidental death benefits under the Plan.  The Defendants contend that the rollover of the vehicle was not an accident, but instead was the result of Mark LaAsmar's voluntary decision to drive while intoxicated.  They also contend that benefits are not payable because Mark LaAsmar injured himself on purpose.  This leaves two issues to be decided: (1) what is the meaning of "accident" under the Plan, and (2) if there was an "accident," does the exclusion in the Plan for "injuring oneself on purpose" apply?

The Plan provides accidental benefits to an insured who is "seriously injured in an accident" when such accident is the "sole cause of the injury" and "the sole cause of the covered loss."  Unfortunately, the Plan does not define the term "accident", and the parties' contrary positions illustrate two different meanings for the word in the context of an incident involving a

---

[3] If an arbitrary and capricious standard applied, the Court would determine whether the denial of benefits was reasonable.  *See Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1457 (10th Cir. 1991).  If the Court were to apply this standard, its reasoning and conclusion would not change, because the Plan's Benefits Specialist used the word "accident" to describe the event.

[4] Although the Tenth Circuit refers to burdens of proof, the Court treats this as a burden of persuasion because there is no evidentiary presentation, the evidence being limited to an administrative record.

motor vehicle.

The Plaintiffs use the word "accident" in a colloquial context - to mean a crash, rollover or other incident involving a motor vehicle. This is the same meaning given to the term by Officer Kaspar, the coroner, and Benefits Specialist Ms. Gibson.[5] In the unique context involving a motor vehicle, the word "accident" simply denotes the event; it does not refer to intent, responsibility or foreseeability.

The Defendants argue for a more technical, legalistic definition of "accident" that pertains to the foreseeability of the event. Dictionaries define "accident" to include "an unintended and unforeseen injurious occurrence," "something that does not occur in the usual course of events or that could not be reasonably anticipated," "an unforeseen and unplanned event or circumstance," and "an unfortunate event resulting especially from carelessness or ignorance." *See* Black's Law Dictionary (8th Ed. 2004); Merriam-Webster's Collegiate Dictionary (10th Ed.). This is the meaning most commonly ascribed in circumstances that do not involve motor vehicles.

This more technical interpretation is illustrated in *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990). In *Wickman*, the insured fell from a bridge and later died from his injuries. The insurance company rejected the spouse's claim for accidental death benefits on the basis that the death was not accidental. The trial court found that the death was not accidental, because the insured had intentionally climbed over the guardrail and it was substantially certain

---

[5] The colloquial meaning of the term "accident" in the automobile context is also demonstrated by the definition of "car accident" set forth in the collaborative encyclopedia known as "wikipedia." It defines "car accident" as "an incident in which an automobile collides with anything that causes damage to the automobile, including other automobiles, telephone poles, buildings or trees, or in which the driver loses control of the vehicle and damages it in some other way, such as driving into a ditch or rolling over." *See* http://en.wikipedia.org/wiki/Car_accident.

that he would suffer significant injuries if he fell.  Affirming the trial court's judgment, the appellate court concluded that the proper analysis was whether a reasonable person in the insured's shoes would have expected to be injured.  *Id*. at 1088-89.  Such interpretation was consonant with the language of the insurance contract that defined the term "accident" as an "unexpected, external, violent, and sudden event."

In this case, the Plan does not define "accident."  Furthermore, it does not distinguish between events involving motor vehicles and those that do not.  Under such circumstances, the Court is left with the task of determining what a reasonable person in Mark LaAsmar's position would have understood the word "accident" to mean in the context of an incident involving a motor vehicle.  *See Chiles*, 95 F.3d at 1511.

Were this a controversy that did not involve a motor vehicle, the Court would have no difficulty in finding guidance in *Wickman*.  But incidents involving motor vehicles are unusual because of the colloquial use of "accident" to describe them.  The Court has great difficulty in concluding that a reasonable person would have understood a technical, legalistic definition related to foreseeability to apply, when the colloquial meaning was used by Officer Kasper, the coroner, and Ms. Gibson, the Plan's Benefits Specialist, in conjunction with these very facts.

A specific, precise meaning for "accident" could have been included in the Plan.  In the absence of a definition in the Plan, this Court is compelled to conclude that a reasonable person in Mark LaAsmar's position would have understood the term "accident" in a motor vehicle context to simply refer to an event involving the vehicle, not the cause or forseeability of the event.  Thus, under the Plan, the Court concludes that the rollover of Mark LaAsmar's vehicle was an "accident."

According to coroner's report, the sole cause of Mark LaAsmar's death was the motor vehicle accident. One might speculate that Mark LaAsmar's intoxication was related to the accident, but there is no evidence in the administrative record to establish that it caused either the accident or Mark LaAsmar's death. Thus Mark LaAsmar's death is an injury for which accidental death benefits must be paid.

The Court then turns to whether Mark LaAsmar's death falls within an exclusion under the Plan. The only exclusion invoked by the Plan and Met Life is "injuring oneself on purpose". The Court finds that this exclusion has no apparent application. The plain language of the exclusion addresses conduct which is undertaken with the specific purpose to harm oneself. There is nothing in the record which establishes that Mark LaAsmar either consumed alcohol or drove thereafter with the specific intent to harm himself. One might easily judge Mark LaAsmar's conduct to be reckless and unlawful, but absent evidence of his intent to injure himself, this exception does not apply.

The Plan and Met Life have the burden to identify applicable exclusions. None other has been identified, therefore the Court concludes that the Plan provides coverage benefits for Mark LaAsmar's death.

**IT IS THEREFORE ORDERED** that:

(1) The Defendants' Motion for Judgment on the Administrative Record, or, Alternatively, for Summary Judgment **(#35),** and the Plaintiffs' Motion for Summary Judgment **(#37)** are **GRANTED** insofar as no trial is required.

(2) In accordance with this opinion, the denial of benefits by the Defendants is **REVERSED**. Judgment shall enter awarding the Plaintiffs accidental death

    benefits.

(3) Upon the entry of judgment, the Clerk of Court is directed to close this case.

Dated this 1st day of June, 2007

                **BY THE COURT:**

                */s/ Marcia S. Krieger*
                _____

                Marcia S. Krieger
                United States District Judge